# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**                                                                    Case No. 6:08-cr-180-Orl-31DAB

**RICHARD C. HANDY**

_____

## MEMORANDUM SENTENCING OPINION

**I. Overview**

On November 10, 2008, Defendant Richard Handy pleaded guilty to one count of knowingly possessing child pornography in contravention of 18 U.S.C. § 2251 *et seq*. Mr. Handy appeared before the Court for sentencing on January 16, 2008. Starting with a base score of 18, and adding the typical enhancements,[1] less credit for acceptance of responsibility, Mr. Handy had a total offense level of 28 under Section 2G2.2 ("§ 2G2.2") of the United States Sentencing Guidelines. With no prior criminal history, Mr. Handy's criminal history category was "I." A score of 28-I produced a Guideline sentencing range of 78-97 months. After a thorough hearing and considering all of the 18 U.S.C. § 3553(a) factors, the Court imposed a sentence of thirty-six (36) months followed by ten (10) years of supervised release.[2]

During the course of the sentencing hearing, the Court refused to enhance Defendant's Guideline sentence pursuant to § 2G2.2(b)(3)(F), which provides for a two (2) point enhancement

---

[1] +2 for prepubescent minors; +4 for portrayal of sadistic content; +2 for use of a computer, and +5 for the number of images/length of video clips.

[2] The basis for the Court's sentence was stated in open court.

where a defendant distributes child pornography. While the Government suggested that Mr. Handy used a peer-to-peer file sharing application, LimeWire, to download the child pornography in this case, it failed to produce any evidence indicating that Mr. Handy used the LimeWire application to make his collection available for transfer to other users.

While numerous courts have authored opinions concerning the application of § 2G2.2(b)(3)(F) in the context of peer-to-peer networking applications such as LimeWire, *see*, *e.g.*, *United States v. Shaffer*, 472 F.3d 1219 (10th Cir. 2007), *United States v. Carani*, 492 F.3d 867 (7th Cir. 2007), *United States v. Darway*, 255 Fed.Appx. 68 (6th Cir. 2007), *United States v. Todd*, 100 Fed.Appx. 248 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1108, 125 S.Ct. 1039 (2005), *United States v. Merrill*, 578 F.Supp.2d 1144 (N.D. Iowa 2008), this Court writes separately to help clarify this developing area of the law.

## II. Applying USSG 2G2.2(b)(3)(F) to Peer-to-Peer Networking Applications

Peer-to-peer ("P2P") networking applications such as LimeWire, BitTorrent, Gnutella, eDonkey, Grokster, Kazaa and sundry others, operate by directly connecting network participants to one another without the use of a centralized server. *See*, *e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919-20 (2005); *Shaffer*, 472 F.3d 1219, 1221 n.1 (10th Cir. 2007). In short, P2P applications allow millions users to quickly and easily share files stored on their computers over the Internet. *Shaffer*, 472 F.3d at 1221. Although P2P applications have some appropriate and beneficial uses, they unfortunately have become a common tool for purveyors and voyeurs of child pornography.

With respect to the sentencing enhancement for distributing child pornography, some courts have intimated that the mere use of a P2P application to download child pornography warrants

-2-

application of USSG 2G2.2(b)(3)(F). *See*, *e.g.,Todd*, 100 Fed.Appx. 248, 250 (5th Cir. 2004)(also finding distribution on other grounds); *United States v. Postel*, 524 F.Supp.2d 1120, 1125 (N.D. Iowa 2006) (citing *Todd* but also finding distribution on other grounds). Others have been more circumspect and required a showing that the illegal pornography was either stored in a user's "shared folder"[3] or that a law enforcement officer received the pornography from the defendant by using the relevant P2P application and obtaining the file directly from the defendant's computer. *See generally Shaffer*, 472 F.3d at 1221. Inasmuch as it is forensically difficult, if not impossible without real-time monitoring, to determine whether a particular file on a user's computer was actually transferred to another user at some point in the past through a P2P application,[4] almost all courts applying 2G2.2(b)(3)(F) have concluded that simply placing pornography in a P2P application's designated "shared folder" constitutes "distribution." *Merrill*, 578 F.Supp.2d 1144, 1151 (N.D. Iowa 2008)(collecting cases). As the Tenth Circuit reasoned in *Shaffer*, discussing 18 U.S.C. § 2252A(a)(2):

> We have little difficulty in concluding that [the defendant] distributed child pornography in the sense of having "delivered," "transferred," "dispersed," or "dispensed" it to others. He may not have actively pushed pornography on Kazaa users, but he freely allowed them to access to his computerized stash of images and videos and openly invited them to take, or download, those items. It is something akin to the owner of a self-serve gas station. The owner may not be present at the station, and there may be no attendant present all. And neither the

---

[3]Discussed further, *infra*.

[4]Excluding, of course, instances where a law enforcement officer actually receives the pornography from the defendant's computer through the P2P application, another P2P user testifies as to the fact that a certain file or files were available on the defendant's computer through the P2P application, or the P2P application created a log file containing a record of all files sent or received by the defendant's computer.

> owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve, or...passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring" or "dispersing" gasoline; the *raison d'etre* of owning a gas station is to do just that. So, too, a reasonable jury could conclude that [the defendant] welcomed people to his computer and was quite happy to let them take child pornography from it.

472 F.3d at 1223-24.

While the Tenth Circuit appropriately concluded that simply making files available for upload through a P2P application may constitute distribution, courts must first have some indicia that the pumps are even on before making a finding that some distribution likely occurred. Mere possession of child pornography on a computer on which a P2P application has been installed, or even using a P2P application to download child pornography, is not enough. Although a defendant may have used a P2P application to download the pornographic files, it does not always follow that he made those files available for upload to other users.

Indeed, not all P2P applications operate in the same fashion. Some applications, for instance, LimeWire, allow users to select not only what folders they want to make available for uploading, but also permit users to restrict the universe of files they are willing to make available for upload to certain types of file extensions (e.g., a user can share the folder "Pics," but only allow harmless .GIF and .JPG image files to be uploaded from the folder – not movie files involving child pornography which have different extensions such as .MOV or .AVI that happen to also be stored in the same folder). *LimeWire UserGuide*, http://wiki.limewire.org/index.php?title=User_Guide_Installation. At the same time, however, unless the user actively restricts his uploading preferences, by default most files a user

downloads using LimeWire are placed in a "save" or download folder which are then automatically made available for upload to other LimeWire users. *Id*. Other P2P applications, such as Kazaa, as discussed by the *Shaffer* Court, permit users to turn uploading off entirely. 472 F.3d at 1221. Still others, such as BitTorrent, actually begin uploading a file as soon as a user starts downloading it from someone else – even before the download is complete.[5] *A Beginner's Guide to BitTorrent*, http://www.bittorrent.com/btusers/guides/beginners-guide. In short, the specific type of P2P application installed on a defendant's computer, and what settings are in place within that P2P application, are critical to the determination of whether a defendant's Guideline sentence should be enhanced pursuant to § 2G2.2(b)(3)(F).

Excluding clear-cut instances of distribution,[6] courts faced with a potential § 2G2.2(b)(3)(F) enhancement for a defendant using a P2P application should first consider: (1) what type of P2P application the defendant utilized; (2) whether the P2P application simultaneously uploads files while they are being downloaded (e.g., the current version of BitTorrent); (3) if the application does not simultaneously upload and download files (e.g., LimeWire or Kazaa), whether the defendant nevertheless downloaded or stored the child pornography in a shared folder which, typically by default, was made available for uploading; and (4) in perhaps rare cases, whether the defendant actually configured the P2P application settings in such a fashion to ensure that no files, or at least not his child pornography, were available for uploading. Courts must also be mindful that P2P

---

[5] Accordingly, any defendant using BitTorrent or a similar variation of that P2P application to download child pornography is at once both likely in possession of *and* distributing child pornography.

[6] *See supra* note 4.

applications are almost constantly changing and with every new release of even the same application, default upload settings can change.

## III. Conclusion

In the instant case, the Government failed to produce any evidence tending to show that Mr. Handy made his child pornography collection available for upload. Indeed, when the Court declined, on the record, to find an enhancement pursuant to 2G2.2(b)(3)(F), the Government did not raise an objection. Accordingly, the two (2) point enhancement in 2G2.2(b)(3)(F) is inapplicable to the instant case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 21, 2009.

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Richard C. Handy

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE